COMPAÑÍA AZUCARERA DEL TOA, Plaintiff and Appellee, *v.* MUNICIPALITY OF TOA BAJA, Defendant and Appellant.

No. 10982. Argued February 1, 1954.—Decided April 13, 1954.

*José R. Fournier* for appellant. *Gabriel de la Haba* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

For the purposes of collecting a municipal license tax, the Municipality of Toa Baja estimated at $3,167,246.72 the volume of business of the Compañía Azucarera del Toa for the calendar year 1949, and levied a tax or license tax of $2,592 on its industry of manufacture of sugar and molasses for the fiscal year 1950–51. This amount was paid under protest by that entity, which thereafter sued the Municipality of Toa Baja for refund of that amount. The Bayamón Part of the Superior Court finally rendered judgment for plaintiff on the ground that the Internal Revenue Act of Puerto Rico levies a tax (insular) on the manufacture, sale, transfer, use, consumption or introduction into Puerto Rico of sugar, and that Act No. 254 of 1938 (Sess. Laws, p. 254) levies a tax on molasses, and that, once the Government of Puerto Rico levies a tax on any article under the Internal Revenue Act the municipalities cannot impose or collect any tax or excise on the same articles. The defendant municipality appealed to this Court from that judgment and assigns the following errors:

"The court did not consider the question of procedure alleged by defendant-appellant in connection with the collection of the tax on commercial and industrial licenses, pursuant to Section 13 of the Municipal License Tax Act of 1914 (Spec. Sess. Laws, p. 174).

"The court erred in concluding that the Municipality of Toa Baja, defendant-appellant, was without authority under the law to levy the license tax on plaintiff-appellee, and in granting the complaint in the above-entitled cause."

The articles in question herein—sugar and molasses—were actually subject to tax under the Internal Revenue Act at the time appellant levied another tax on the same ar-

ticles, by way of a municipal license tax, under the authority of a municipal ordinance. Therefore, both the municipal ordinance and the tax here involved are null and void. *San Miguel & Cía* v. *Díez de Andino, Treas.*, 71 P.R.R. 320, and cases therein cited. In that case it was stated at p. 322:

"Section 99 of the Internal Revenue Law of Puerto Rico (Act No. 85 of 1925, p. 584) provides as follows:

" 'From and after the date of approval of this Act, no municipal district or other administrative division of Porto Rico may levy or collect any excise or local tax on any article subject to taxation under the provisions of this Act; *Provided,* That nothing herein contained shall be understood to repeal in whole or in part Act No. 26, entitled "An Act authorizing the municipalities of the Island of Porto Rico to levy and collect annual taxes to be used in meeting their budgetary expenses, and for other purposes", approved March 28, 1914; *And provided, further,* Than when the levying of a license tax is in conflict with the tax levied in accordance with the general Excise Tax Law and both cannot be made effective, it shall be understood that the tax levied under the Excise Tax Law shall prevail.'

"Based on § 99, this Court has repeatedly held that if an article has been taxed under the Internal Revenue Law, a municipality is precluded from taxing it again, whether in the form of a municipal license tax or any other local excise tax. *Porto Rico Distilling Co.* v. *Seijo,* 42 P.R.R. 409 (1931); *People* v. *Irizarry,* 46 P.R.R. 867 (1934), and *Andréu, Aguilar & Co.* v. *Benítez, Admor.,* 56 P.R.R. 554 (1940)."

██ The Municipality of Toa Baja invokes the provisions of Act No. 437, approved May 15, 1951 (Sess. Laws, p. 1,254), and particularly the Declaration of Policy therein contained, in support of the validity of the municipal license tax imposed here. That Act amends § 99 of our Internal Revenue Law as follows:

"Section 99.—On and after the day this Act is approved, no municipal district or other administrative division of Puerto Rico may levy or collect any excise or local tax on any article subject to taxation under the provisions of this Act, except the tax on the volume of business, authorized by Act No. 26, approved March 28, 1914, known as Municipal License Tax Act,

as amended, the levying and collection of which by the municipalities and the Government of the Capital is hereby expressly authorized, and in said volume of business there shall be included the business operations in connection with articles taxable under this Act or any other insular internal-revenue law. When the application of the Municipal License Tax Act, jointly with the application of this Act, or any insular excise Act, results in an untenable tax situation, because it violates a constitutional prohibition, if said situation turns out to be constitutional through the levy and collection of only one of the two excises, the insular tax shall prevail."

Act No. 437 has a prospective character and is not applicable to the case at bar, where the municipal license tax was levied for the fiscal year 1950–51. However, the appellant invites attention to the Declaration of Policy contained in Act No. 437, which reads as follows:

"STATEMENT OF MOTIVES

"Ever since the approval of the License Tax Act in 1914, it has always been the legislative policy that the taxes authorized by said Act be collected by the municipal corporations, both on merchandise and activities exempt from insular excises, as well as on merchandise and activities subject to such excises. When with the Internal Revenue Law of 1925 a Sales Act was approved levying insular excises on the same sales encumbered with the municipal excises levied under the License Tax Act, it was necessary to clarify that both sale taxes would continue to be collected. For that purpose, Section 99 was added to the Internal Revenue Law. Before said date, said Act had not contained any provision relative to the collection of the municipal excise taxes. The original Section 99 was drafted by the Legislature bearing in mind the decision in the case of *Fantauzzi* v. *Municipal Assembly of Arroyo*, 295 Federal 803, for which reason a language was adopted which have given rise to judicial interpretations that have defeated the legislative policy. It is necessary to rephrase said legislative policy so as to avert any judicial construction inimical to the evident intent of the legislator."

The considerations embodied in that Declaration of Policy as to what had been the legislative intent before the original

enactment of § 99, are not retroactively conclusive, nor do they overcome the validity of the interpretation placed upon that Section by this Court in the cases, *supra.* The text of the original § 99, already quoted in *San Miguel & Cía.* v. *Diez de Andino, Treas., supra,* was clear. That Section provided expressly, leaving no room for any other reasonable interpretation, that no municipality could levy or collect any tax on any article subject to taxation under the provisions of the Internal Revenue Act.

 The essential allegation of the Municipality of Toa Baja is that the taxpayer here is precluded from attacking in court the validity of the license tax in question, because it did not comply with the preliminary proceeding allegedly required by the Municipal License Tax Act—Act No. 26 of March 28, 1914—as a condition precedent to judicial action, and, specifically, because the taxpayer did not previously challenge the license tax before the Municipal Assembly.

Sections 13 and 14 of the Municipal License Tax Act provide as follows:

"Section 13.—That any taxpayer who may consider the amount fixed by the municipal council for the payment of the taxes referred to in this Act unjust, may file a protest with said municipal council prior to the 20th day of May of each year, stating in writing such objections as he may deem pertinent. The municipal council shall appoint from its body a special committee consisting of three members to investigate the case. Said committee shall be known as the Industrial and Commercial Tax Commission, shall meet within the fifteen days following the date of the filing of the protest, and shall make an investigation, examining, should it be deemed necessary, the accounts of the complainant, and receiving under oath or affirmation all such declarations as it may deem necessary in order to acquire an exact knowledge of the facts under investigation. Said investigation having been finished, the commission shall file its report with the municipal council which shall render a decision in view thereof. The commission appointed by the municipal council for the purpose of making the investigations referred to in this section, shall have, and there is hereby conferred upon it, the power to administer oaths or affirmations.

"Section 14.—That any taxpayer dissatisfied with the decision of the municipal council, relative to such protests as he may have filed in accordance with the preceding section, shall nevertheless pay the amount of said tax as levied, under protest; but he may have recourse to any court of competent jurisdiction; *Provided, however,* That such court proceedings are had within thirty days after payment of the tax. The decision of the court in favor of the taxpayer shall constitute authority to the municipal treasurer to refund the amount of tax paid or the proper portion of the same, in accordance with the decision of the court."

In the case at bar, the taxpayer filed no objection with the Municipal Assembly before making the payment under protest and before the commencement of the judicial action. We are cognizant of the existence of a general rule that the conditions prescribed by the statute must be performed before a tax or excise may be challenged in court, and, in general, that the administrative remedies must be exhausted before resorting to the courts, regarding protest before the Municipal Assembly as an administrative remedy. 51 Am. Jur. 1006, § 1168; McQuillin, Municipal Corporations, 3d ed., Vol. 16, § 44.183, p. 464. However, in the case at bar the license tax in question was absolutely void, and the ordinance authorizing the imposition of license taxes was on its face ultra vires and void. *Andréu Aguilar & Co.* v. *Benítez, Admor.,* 56 P.R.R. 554. Under those circumstances, the taxpayer did not have to resort to the Municipal Assembly as a condition precedent to the presentation of a judicial claim, considering in particular the fact that in the case at bar the taxpayer was notified directly of the taxes in question, and that it performed the condition of payment under protest. Furthermore, the ordinance in question had its statutory basis in § 2, Group C, of the Municipal License Tax, which refers specifically to the businesses of sugar and molasses mills, as subject to license taxes. Such statutory authorization was inoperative so long as those same articles were subject to taxation under the Internal Revenue Act—under the original

§ 99 of the latter. Since the statutory basis of the ordinance in question was academic and ineffective, the previous protest before the Municipal Assembly was unnecessary.

In the case of *Southern Boulevard R. Co.* v. *City of New York*, 86 F. 2d 633, a tax levied by the City of New York was challenged. It was held that if the taxpayer does not complain merely of the assessment of the tax but attacks its intrinsic constitutional validity, as it appears on its face, he is not required to exhaust administrative remedies as a condition precedent to judicial attack, the taxpayer having paid the tax under protest. In the case of *Buder* v. *First Nat. Bank*, 16 F. 2d 990, 993, certiorari denied in 274 U. S. 743, it is held that a taxpayer challenging a municipal tax need not apply for relief in the absence of some effective law authorizing such tax. It is stated that, in the absence of legal intrinsic power to levy the tax, there could be nothing more futile than an application for administrative relief.

The judgment appealed from will be affirmed.